IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  11-050 (RWR) |
| | ) | |
| FELIPE MARTINEZ-GONZALES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Martinez-Gonzales, through undersigned counsel, respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.  Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Martinez-Gonzales asks the Court to sentence him to a period of incarceration of time served.  Such a sentence – which amounts to approximately 30 months – would be consistent with the goals of sentencing as well as fair and reasonable in light of Mr. Martinez-Gonzales's background and characteristics.[1]  The government's requested sentence of 70 months is far greater than necessary to fulfill the purposes of sentencing.

**BACKGROUND**

On February 23, 2011, Mr. Martinez-Gonzales was charged, in a one-count Indictment, with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46

---

[1]Counsel notes that, when credit for "good time" is taken into consideration, a sentence of 35 months results in an actual incarceration period of 30 months.

U.S.C. §§ 70503(a) and 70506(b). On May 15, 2013, a Superceding Information was filed, charging Mr. Martinez-Gonzales with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) and 21 U.S.C. § 960(b)(3). On May 17, 2013, Mr. Martinez-Gonzales pled guilty to the Information pursuant to a written plea agreement. While the agreement contemplated cooperation with the government, Mr. Martinez-Gonzales was only able to debrief with agents on one occasion.

**DISCUSSION: UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. MARTINEZ-GONZALES SHOULD RECEIVE A SENTENCE OF TIME SERVED.**

   **I.   SENTENCING PRINCIPLES**

Section 3553(a) of Title 18, United States Code, sets forth factors that federal courts must consider in imposing a sentence:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant:
>
>   (2) the need for the sentenced imposed -
>
>>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:
>>
>>   (B) to afford adequate deterrence to criminal conduct:
>>
>>   (C) to protect the public from further crimes of the defendant: and
>>
>>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:
>
>   (3) the kinds of sentences available:

    (4) the kinds of sentence and the sentencing range established

    (5) any pertinent policy statement [issued by the Sentencing Commission]

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct: and

    (7) the need to provide restitution to any victims of the offense.

Pursuant to Section 3553(a), courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

As articulated by the Supreme Court in Koon v. United States, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the sentencing judge should consider "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

In the case at hand, an individualized assessment of Mr. Martinez-Gonzales's case militates in favor of a sentence of time served. Mr. Martinez-Gonzales's immediate acceptance of responsibility, coupled with his extended detention far from home and willingness to assist the government, indicate that no purpose of sentencing–other than punishment–would be served by imposing an additional period of incarceration.

    II.    **THE PRESENT CASE**

    A.    <u>Statutory Provisions</u>

Pursuant to the applicable statutes, the maximum term of imprisonment is 20 years and, because Mr. Martinez-Gonzales is eligible for the "safety valve," the maximum term of supervised release is three years.

B.  Advisory Sentencing Guidelines

The Probation Office, consulting the 2012 edition of the Guidelines Manual, has concluded that the Total Offense Level in this case is 27 and that Mr. Martinez-Gonzales's criminal history category is I, resulting in an advisory Guideline range of 70-87 months. Mr. Martinez-Gonzales has no objection to the Probation Office's calculation.

With respect to the Guidelines, the Court should depart downwards based on the D.C. Circuit's decision in United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994). Should he be sentenced to further time, Mr. Martinez-Gonzales–as a non-citizen–will be barred from participating in a host of programs available to citizens at the Bureau of Prisons and will thus experience a substantively harsher imprisonment than that of similarly situated United States citizens. In addition, he may spend time beyond that to which he is sentenced in immigration proceedings. In its holding in Smith, the D.C. Circuit specifically held that a ten percent downward departure may be appropriate if a defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement. Pursuant to Smith, therefore, this Court should consider the fair and appropriate Guideline range to be 63-78 months.

C.  Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553 (a), sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

The crime to which Mr. Martinez-Gonzales pled guilty in this case is extremely serious. As the court is aware, he assisted other individuals–including his older brother, Hipolito–in their efforts to possess and distribute cocaine on board "stateless vessels." Specifically, he used his expertise with boats to lend logistical aid to his brother–repairing vessels at various launch points on the northern coast of Colombia and installing motors aimed at increasing those vessels' speeds. While Mr. Martinez-Gonzales was self-employed in legal and productive ventures throughout the duration of the conspiracy, he was occasionally paid by his brother Hipolito for his role in the conspiracy.

As indicated in the Presentence Investigation Report ("PSR"), Mr. Martinez-Gonzales has no prior drug-related convictions and played a minor role in the overall scheme at issue. Mr. Martinez-Gonzales accepted immediate and full responsibility for his conduct and it is questionable–given his background–that he would have become involved in the conspiracy in the first place had it not been for his brother.

*II. Background and Characteristics of the Defendant*

As outlined in the PSR, Mr. Martinez-Gonzales grew up in impoverished conditions in

Turbo, Colombia. His father, now deceased, left his mother when Mr. Martinez-Gonzales was a toddler, and the family's resulting financial situation required Mr. Martinez-Gonzales to work alongside his mother not long thereafter. Mr. Martinez-Gonzales's close relationship with his mother made her death during his incarceration particularly painful.

Despite his upbringing and the limited opportunities it presented, Mr. Martinez-Gonzales pursued his education and obtained not only a high school diploma but a certificate in business from a public university. Unlike almost every other teenager in his small community, Mr. Martinez-Gonzales did not join the FARC during this period despite the heavy presence–and active recruiting efforts– of the organization. As a full-time university student, Mr. Martinez-Gonzales joined the national police force to fulfill his military service requirement. While he was well-suited to the work, the racism he experienced as an officer of color propelled him to leave the force and pursue alternative employment. In 2002, following a few years as a clerk in the Turbo mayor's office, Mr. Martinez-Gonzales started his own business operating water taxis. It was in that capacity that he learned how to repair boats and obtained his national pilot license.

Mr. Martinez-Gonzales has been with his wife, Tiana Gomez, since 2003. They have two young boys, aged eight and four, with whom Mr. Martinez-Gonzales enjoyed a close relationship. The youngest child was born several months prematurely and overcame what Mr. Martinez-Gonzales recalls as a stressful and prolonged stay in the intensive care unit. Despite the distance, Mr. Martinez-Gonzales has maintained contact with his wife and children through telephone calls and letters. Mr. Martinez-Gonzales's family misses him tremendously, and the separation from them and his country has made the nature of his confinement harsher and more lonely than it might otherwise be.

As noted in the PSR, Mr. Martinez-Gonzales has no criminal history whatsoever. He not only accepted responsibility for the instant case soon after his extradition, but he promptly met with law enforcement officers to debrief and pled guilty to an agreement that envisioned further cooperation.[2] Mr. Martinez-Gonzales, through counsel, reached out to the government on several occasions after the initial meeting to indicate his desire and willingness to provide additional information. For reasons based primarily on time constraints and availability on the part of the relevant agents, Mr. Martinez-Gonzales was unable to engage in further discussions. While Mr. Martinez-Gonzales fully understands that cooperation in criminal matters is not dictated by defendants, he is disappointed that after having been offered a cooperation plea and led to believe he might have the opportunity to earn the benefits of a government motion, he was never afforded the chance to offer more assistance. This is particularly troubling in light of the fact that his cooperation plea was public and he may well be perceived by others as a cooperator despite receiving few of the attendant benefits.

*III. The Need to Avoid Unwarranted Disparities*

There are three ways in which imposing a sentence of 70 months' incarceration in Mr. Martinez-Gonzales's case would create an unwarranted disparity. First, as noted above, it would create a disparity between Mr. Martinez-Gonzales and similarly-situated defendants who happen to be citizens of the United States. A citizen receiving a sentence of 70 months' incarceration would not only be released–in all likelihood–to a halfway house several months prior to his

---

[2]Counsel notes that the initial debriefing was prompted by the government. Specifically, the former prosecutor assigned to this case inquired whether Mr. Martinez-Gonzales would be willing to debrief with law enforcement and suggested that the government was interested in his background knowledge and information.

7

official release date, but would qualify to participate in a host of educational and vocational programs while imprisoned in the Bureau of Prisons.  Mr. Martinez-Gonzales is eligible for neither of these benefits and, in fact, faces several weeks of detention beyond his period of imprisonment imposed in immigration proceedings.

Second, counsel submits that a sentence of 70 months would create a disparity between individuals charged with drug trafficking offenses prosecuted by the Narcotics and Dangerous Drugs Section of the Justice Department and those prosecuted by the United States Attorney's Office.  While Mr. Martinez-Gonzales certainly had no *right* to the filing of a motion under United States Sentencing Guidelines Section 5K1.1, it is worth noting that defendants in his shoes prosecuted by a different section of the Department of Justice might well have fared differently.  Being willing to testify against a co-defendant who, aware of this, eventually decides to plead guilty is considered significant in many cases.  The fact that the United States never prepared Mr. Martinez-Gonzales to testify is certainly not his fault and does nothing to change the fact that his co-defendant was aware of his intentions.

Third, a sentence of 70 months would create a disparity among cases prosecuted close in time in this same courthouse by the very same section of the Justice Department.  While counsel for the government suggests that a comparison to the case of United States v. Valderrama Carvajal and Munoz Miranda (10-106 RMC) is inapposite, Mr. Martinez-Gonzales does not concur.  In that case, the defendants–described as "leaders" of a Colombian drug trafficking network by the United States in its sentencing memoranda–received sentences of 60 months' incarceration despite continuously denying responsibility for their actions, pleading guilty literally on the eve of trial, and using judicial resources for multiple lengthy motions hearings.

Among other things, the inconsistency in sentencing requests makes it challenging for counsel to advise defendants effectively and can lead to a distrust in the system and in their representation.[3]

### IV. Needs of the Community and Public

Mr. Martinez-Gonzales will not be "re-entering" the community here in the United States. As for any threat he poses to this country through drug trafficking or other criminal activities, the time he has already served incarcerated has served as a loud and clear wake-up call and deterrent to unlawful activity. The price Mr. Martinez-Gonzales has paid for assisting his brother for little personal gain has been sufficient to impress upon him the importance of returning to productive and lawful activities. Fortunately, he will be well-situated to do so once he returns to Colombia.

### **CONCLUSION**

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Martinez-Gonzales asks the Court to sentence him to a period of incarceration of time served. Such a sentence would be fair and reasonable in light of Mr. Martinez-Gonzales's background, immediate acceptance of responsibility, and willingness to assist the government. Mr. Martinez-Gonzales has been far from his family for almost three years and is likely to face additional time in detention prior to his eventual deportation. There is no purpose other than additional punishment that would be served by a longer sentence. Mr. Martinez-Gonzales asks that, whatever sentence the Court imposes, it include the time spent incarcerated in Colombia prior to his extradition.

---

[3] In the case of defendants being prosecuted simultaneously following extradition from Colombia, many have been housed together and have developed relationships long before they ever arrive in the United States. When counsel cannot fully understand why cases are treated differently, it is difficult to explain the disparities to their clients.

.

        Respectfully submitted,

        A.J. Kramer
        Federal Public Defender

        _____
        Lara G. Quint
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W.
        Washington, D.C. 20004
        (202) 208-7500 ex.133